IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOHN ALEXANDER SULLIVAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:15-cv-504 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff John Alexander Sullivan ("Sullivan") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act").[1] 42 U.S.C. §§ 401–433. Sullivan argues that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) determine the date last insured; (2) consider a reviewing source opinion; and (3) evaluate Sullivan's credibility. I agree that the ALJ erred by failing to properly evaluate Sullivan's credibility. Accordingly, I **GRANT IN PART** Sullivan's Motion for Summary Judgment (Dkt. No. 13), **DENY** the Commissioner's Motion for Summary Judgment (Dkt. No. 15), and **REVERSE AND REMAND** this case for further administrative proceedings consistent with this Opinion.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Sullivan failed to demonstrate that he was disabled

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

1

under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Monroe, the Court of Appeals found that the ALJ did not "satisfactorily explain his decision to partly discredit [the claimant's] testimony regarding the symptoms and functional limitations resulting from his impairments." Monroe, 826 F.3d at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion lacks the specific analysis that would allow for meaningful review.

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

## CLAIM HISTORY

Sullivan filed for DIB on June 18, 2012 and claims that his disability began on December 1, 2011,[3] due to neuralgia and arthritis in hands, vision issues, diverticulitis, sciatica, lower back problems, colostomy, and rectal prolapse.[4] R. 46, 51, 155. Sullivan's date last insured was December 31, 2011.[5] R. 11, 168. Thus, he must show that his disability began on or before December 31, 2011 and existed for twelve continuous months to receive DIB.[6] 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Sullivan's applications at the initial and reconsideration levels of administrative review. R. 46–56, 58–67. On April 22, 2014, ALJ Geraldine H. Page held a hearing to consider Sullivan's claims for DIB. R. 21–44. Counsel represented Sullivan at the hearing, which included testimony from vocational expert Mark Hileman.

On June 12, 2014 the ALJ entered her decision analyzing Sullivan's claim under the familiar five-step process[7] and denying his claim for benefits. R. 11–22. The ALJ found that

---

[3] In his Title II application, Sullivan alleged disability beginning October 15, 2006; however, at the hearing, Sullivan amended his alleged onset date to December 1, 2011 and offered to accept a closed period of disability ending December 1, 2012. R. 11, 27, 47.

[4] Sullivan filed a previous application for disability on October 16, 2007 that was denied at the reconsideration level of administrative review on May 8, 2008. R. 47.

[5] Sullivan was 52 years old on his date last insured, making him an individual closely approaching advanced age. R. 18.

[6] Sullivan points out that the ALJ's opinion was internally inconsistent regarding the date last insured. P's Br. at 6, Dkt. No. 14 ("The ALJ . . . listed three different dates for the date last insured . . . .").

[7] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

Sullivan was insured at the time of the alleged disability onset and that he suffered from the severe impairments of degenerative joint disease of the feet and possibly fingers, diverticulitis with complications status-post surgeries, lumbar spine strain and mild degenerative disc disease of the lumbar spine, and mild chronic obstructive pulmonary disease. R. 13. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 14. The ALJ concluded that Sullivan retained the residual functional capacity ("RFC") to perform a limited range of light work. Id. Specifically, the ALJ found that Sullivan could occasionally climb ramps and stairs, kneel, and crawl, could frequently handle, finger, feel, grip, and grasp, and must avoid extreme temperatures, hazardous machinery, unprotected heights, vibrating surfaces, and climbing ladders, ropes, and scaffolds. Id.

The ALJ determined that Sullivan was unable to return to any of his past relevant work, but that he could perform jobs that exist in significant numbers in the national economy, such as ticket taker, cafeteria attendant, and cashier II. R. 18–19. Thus, the ALJ concluded that Sullivan was not disabled. R. 20. Sullivan appealed the ALJ's decision and the Appeals Council denied his request for review on August 31, 2015. R. 1–3. This appeal followed.

## ANALYSIS

### A. Medical History

Sullivan has a history of diverticulitis, and has been hospitalized several times due to complications from the disease. He was hospitalized for nine days beginning on December 7, 2011 with abscessed diverticulitis, underwent a percutaneous drainage of the abscess and was placed on intravenous antibiotics.[8] R. 356, 488. He returned to the hospital on March 15, 2012,

---

[8] Diverticulitis is the inflammation of one or more pouches that bulge from the wall of a hollow organ, such as the colon. Symptoms include muscle spasms and cramps in the abdomen. Diverticulitis in the colon can cause complications, such as an abscess or a perforation. See http://www ncbi nlm nih.gov/pubmedhealth/PMHT0022910/

and was diagnosed with a significant large rectal prolapse.[9] R. 487. Sullivan underwent surgical resection of his rectum and was discharged on March 20, 2012. R. 487. However, he returned to the hospital on March 24, 2012 with an anastomotic leak, and underwent a temporary colostomy, remaining in the hospital until April 9, 2012. R. 525–26. Sullivan returned to the hospital on May 31, 2012 for reversal of his colostomy, and remained hospitalized until June 6, 2012. R. 476–79.

On August 17, 2012, William Humphries, M.D., performed a consultative examination.[10] Sullivan reported frequent abdominal pain and "stools averaging about ten times per day." R. 552. Dr. Humphries diagnosed Sullivan with mild COPD, mild carpal tunnel syndrome, postsurgical abdominal pain, mild degenerative joint disease in both feet and possibly fingers, and chronic lumbar strain with sciatica. R. 554. Dr. Humphries limited Sullivan to sitting, standing, and walking six hours in and eight-hour day, lifting 20 pounds occasionally and 10 pounds frequently, occasional climbing, kneeling, and crawling, and no continuous gripping or grasping. R. 554.

No treating physician provided an opinion of Sullivan's functional limitations during the relevant period. On August 22, 2012, state agency physician Joseph Duckwall, M.D., reviewed Sullivan's medical records and determined that he could perform light work. R. 53–54. On May 6, 2013, state agency physician Paula Nuckols, M.D. concluded that there was "insufficient evidence to fully determine how severely limited [Sullivan] was before [his date last insured on December 31, 2011]" and stated Sullivan's claim was "denied for insufficient evidence." R. 64–65.

---

[9] Rectal prolapse occurs when the rectum descends into the anal opening. See https://medlineplus.gov/ency/article/001132.htm

[10] Dr. Humphries had performed a previous consultative examination in 2008, pursuant to Sullivan's previous disability claim. R. 15, 269.

5

## B. Credibility[11]

Sullivan contends that the ALJ did not satisfactorily explain her decision to partly discredit his testimony regarding the symptoms resulting from his impairments, specifically his abdominal pain and frequent bowel movements. I agree that the ALJ's opinion lacks the specific analysis required to permit meaningful review.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Social Security Ruling 96-8p explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." See Monroe, 826 F.3d at 189 (internal citations omitted).

---

[11] I note that in March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. SSR 16-3 at *1. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3P, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16-3P was issued long after the ALJ's consideration of Sullivan's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016); Lopez v. Colvin, No. 3:16CV24 (JAG), 2016 WL 6594107, at *4 (E.D. Va. Oct. 13, 2016) (noting "[t]he Agency does not have the power to engage in retroactive rulemaking").

However, I note that the methodology required by both SSR 16-3P and SSR 96-7P, are quite similar. Under either, the ALJ is required to consider Sullivan's report of his own symptoms against the backdrop of the entire case record; in SSR 16-3, this resulted in a "credibility" analysis, in SSR 16-3, this allows the adjudicator to evaluate "consistency."

The ALJ did not clearly explain whether she credited Sullivan's testimony that he had abdominal pain and bowel movements approximately ten times per day. Further, the ALJ did not ask the vocational expert whether these symptoms would affect Sullivan's ability to do the vocational jobs provided. At the hearing, Sullivan emphasized that the "fact that [he had] to go to the bathroom constantly" made working difficult because he never knew when he would have to run to the bathroom. R. 43.

The ALJ did cite evidence she appeared to believe discredited Sullivan's testimony regarding his gastrointestinal symptoms. The ALJ wrote:

> [Sullivan] sought very limited medical treatment after his date last insured in 2013,[12] and the treatment records provide no evidence that his alleged symptoms at that time existed before his date last insured. Sullivan only mentioned gastrointestinal symptoms to a nurse practitioner twice in 2013, and he did not state that they had affected him since 2012. Additionally, his treatment was very conservative. He told her that he mostly controlled his symptoms with diet and did not want to take medications.

R. 17–18. During her discussion of Dr. Humphries' August 2012 consultative evaluation, the ALJ noted Sullivan's report that he "still had frequent abdominal pain and stools 10 times per day, but no significant diarrhea." R. 16. The ALJ also specifically noted in her opinion that Sullivan "alleged he still has significant problems and has to use the restroom about 10 times per day." R. 15. The ALJ conceded that the "medical evidence of record shows that [Sullivan] would have missed many days of work during the period from December 2011 to June 2012, such that it is unlikely he would have been able to maintain employment." R. 17. But, the ALJ emphasized, "this period is only seven months [and thus does not meet the 12 month duration requirement]." Id. The ALJ wrote that "since June 2012, [Sullivan] has not sought any medical treatment, including treatment related to his gastrointestinal problems." Id.

---

[12] The structure of this sentence makes it unclear whether the ALJ has incorrectly listed Sullivan's date last insured.

7

However, the ALJ failed to "build an accurate and logical bridge from the evidence to [her] conclusion" that Sullivan's testimony was not credible. Monroe, 826 F.3d at 189 (quoting Clifford, 227 F.3d at 872). The ALJ did not cite to specific medical records, stating only that Sullivan "mentioned gastrointestinal symptoms to a nurse practitioner twice in 2013 [but] did not state [his symptoms] had affected him since 2012." Moreover, the ALJ's analysis conflicts with the record. In fact, Sullivan saw a nurse practitioner in December 2013, and the treatment record indicates "[patient] suffers from severe diarrhea *that began two years ago* with surgeries removing a foot of his large intestine." R. 568 (emphasis added). The treatment record also explains that Sullivan "took Lotomil in the past and this caused him to feel poor." Id. While the treatment record indicates that Sullivan "[f]eels like he can control his symptoms with diet" it also states that he "[d]oes not eat when he knows he has to leave the house." Id. Sullivan saw the same nurse practitioner on June 3, 2013 complaining of abdominal pain and frequent, severe, chronic diarrhea, and was assessed with diarrhea following gastrointestinal surgery. R. 572–73.

Here, the ALJ did not indicate how the facts she cited showed that Sullivan either did not have urgent bowel movements approximately ten times per day, or that these frequent, urgent bowel movements would not affect his ability to work. Moreover, the ALJ did not accurately cite to the medical record. Thus, I am left to guess as to how Sullivan's claimed frequent bowel movements would affect his ability to work, which prevents meaningful substantial-evidence review. On remand, if the ALJ discredits Sullivan's testimony regarding his frequent bowel movements, she must provide a clearer explanation of her reasons, so as to allow meaningful review.

Because I find that remand is warranted based on the ALJ's failure to explain her decision to partly discredit Sullivan's testimony regarding the symptoms resulting from his

impairments, Sullivan's additional allegations of error will not be addressed. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take into consideration Sullivan's remaining allegations of error.

## CONCLUSION

For the foregoing reasons, Sullivan's Motion for Summary Judgment is **GRANTED IN PART** and the Commissioner's Motion for Summary Judgment is **DENIED** and this case is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Opinion.

Entered: February 2, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge